IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELI LILLY & COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMNEAL PHARMACEUTICALS LLC and<br>AMNEAL PHARMACEUTICALS, INC.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. _____<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

Plaintiff Eli Lilly and Company ("Lilly") by its attorneys, hereby alleges as follows:

## **NATURE OF THE ACTION**

1.　　This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, that arises out of the submission by defendants Amneal Pharmaceuticals LLC and Amneal Pharmaceuticals, Inc. (collectively "Defendants" or "Amneal") of Abbreviated New Drug Application ("ANDA") Nos. 221733 and 221732 ("Amneal's ANDAs") to the U.S. Food and Drug Administration ("FDA") seeking approval to manufacture, use, import, offer to sell, and/or sell generic versions of, respectively, Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) in 2.5 mg/0.5 mL, 5 mg/0.5 mL, 7.5 mg/0.5 mL, 10 mg/0.5 mL, 12.5 mg/0.5 mL, and 15 mg/0.5 mL strength autoinjectors ("Proposed ANDA Products") prior to the expiration of U.S. Patent Nos. 9,474,780 ("the '780 Patent"); 11,357,820 ("the '820 Patent"); 11,918,623 ("the '623 Patent"); 12,295,987 ("the '987 Patent"); 12,343,382 ("the '382 Patent"); 12,453,755 ("the '755 Patent"); 12,453,756 ("the '756 Patent"); 12,453,758 ("the '758 Patent"); 12,616,740 ("the '740 Patent"); and 12,629,404 ("the '404 Patent") (collectively, "the Asserted Patents"). Amneal Pharmaceuticals LLC notified Lilly that Defendants had submitted Amneal's ANDAs by letters

dated July 10, 2026 (the "Notice Letters"). Upon information and belief, if approved by the FDA, Defendants' Proposed ANDA Products will be marketed as a competing product to Mounjaro® (tirzepatide), a product developed and marketed by Lilly and its affiliates as an adjunct to diet and exercise to improve glycemic control in adults and pediatric patients 10 years of age and older with type 2 diabetes mellitus, and Zepbound® (tirzepatide), a product developed and marketed by Lilly and its affiliates, in combination with a reduced-calorie diet and increased physical activity:

- to reduce excess body weight and maintain weight reduction long term in adults with obesity or adults with overweight in the presence of at least one weight-related comorbid condition.

- to treat moderate to severe obstructive sleep apnea (OSA) in adults with obesity.

## PARTIES

2. Plaintiff Lilly is a corporation organized and existing under the laws of the State of Indiana, having a principal place of business at Lilly Corporate Center, Indianapolis, Indiana 46285.

3. Upon information and belief, Amneal Pharmaceuticals LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a place of business at 400 Crossing Blvd., Bridgewater, NJ 08807. Upon information and belief, Amneal Pharmaceuticals LLC is a wholly owned subsidiary of Amneal Pharmaceuticals, Inc. Upon information and belief, Amneal Pharmaceuticals LLC is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries throughout the United States, including in Delaware.

4. Upon information and belief, Amneal Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 400

Crossing Blvd., Bridgewater, NJ 08807. Upon information and belief, Amneal Pharmaceuticals, Inc. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries throughout the United States, including in Delaware.

5. Upon information and belief, Defendants collaborate with respect to the development, regulatory approval, marketing, sale, and/or distribution of pharmaceutical products. Upon further information and belief, Defendants are agents of each other and/or operate in concert as integrated parts of the same business group.

6. Upon information and belief, Defendants acted in concert to develop their Proposed ANDA Products that are the subject of Amneal's ANDAs and to seek regulatory approval from the FDA to market and sell their Proposed ANDA Products throughout the United States, including in Delaware.

7. Upon information and belief, Defendants intend to benefit directly if Amneal's ANDAs are approved by participating in the development, regulatory approval, marketing, manufacture, importation, distribution, and/or sale of their Proposed ANDA Products.

8. Upon information and belief, Defendants intend to act collaboratively to obtain approval for Amneal's ANDAs, and, in the event the FDA approves those ANDAs, to commercially manufacture, use, offer for sale, sell, and/or import their Proposed ANDA Products in the United States, including in Delaware.

9. Upon information and belief, Defendants submitted Amneal's ANDAs seeking approval to market and sell generic versions of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) in 2.5 mg/0.5 mL, 5 mg/0.5 mL, 7.5 mg/0.5 mL, 10 mg/0.5 mL, 12.5 mg/0.5 mL, and 15 mg/0.5 mL strength autoinjectors.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

11.     There is an actual case or controversy between the parties because, *inter alia*, Defendants submitted Amneal's ANDAs under section 505(j) of the Federal Food, Drug, & Cosmetic Act ("FDCA") for Mounjaro® (tirzepatide) and Zepbound® (tirzepatide), which are claimed by—or the use of which is claimed by—the Asserted Patents.

12.     This Court has personal jurisdiction over Defendants because they are entities organized and existing under the laws of Delaware, are qualified to do business in Delaware, and have appointed a registered agent for service of process in Delaware.  Therefore, Defendants have consented to general jurisdiction in Delaware.

13.     In addition, this Court has personal jurisdiction over Defendants because, among other things, upon information and belief: (1) Defendants submitted Amneal's ANDAs for the purpose of seeking approval to engage in the commercial manufacture, use, sale, or offer for sale of their Proposed ANDA Products in the United States, including in Delaware; (2) upon approval of Amneal's ANDAs, Defendants, themselves and through their affiliates and subsidiaries, will market, distribute, offer for sale, sell and/or import their Proposed ANDA Products in the United States, including in Delaware, and will derive substantial revenue from the use or consumption of their Proposed ANDA Products in Delaware.  Upon information and belief, upon approval of Amneal's ANDAs, Defendants' Proposed ANDA Products will, among other things, be marketed, distributed, offered for sale, sold, and/or imported in Delaware; prescribed by physicians practicing in Delaware; dispensed by pharmacies located within Delaware; and/or used by patients in Delaware, all of which would have substantial effects on Delaware.

14.     In addition, this Court has personal jurisdiction over Defendants because they regularly engage in patent litigation concerning Defendants' ANDA products in this District, do not contest personal jurisdiction in this District, and have purposefully availed themselves of the rights and benefits of this Court by asserting claims and/or counterclaims in this District. *See, e.g., Nivagen Pharms., Inc. v. Amneal Pharms., Inc.*, C.A. No. 24-846-GBW, D.I. 93 (D. Del. Dec. 13, 2024); *Bayer Healthcare LLC v. Amneal Pharms. LLC*, C.A. No. 21-1770-WCB, D.I. 10 (D. Del. Feb. 18, 2022).

15.     For at least the above reasons, it would not be unfair or unreasonable for Defendants to litigate this action in this District, and Defendants are subject to personal jurisdiction in this District.

16.     Venue is proper in this Court under 28 U.S.C. § 1400(b) with respect to Defendants at least because, upon information and belief, Defendants are entities organized and existing under the laws of Delaware and therefore reside in Delaware for purposes of venue.

## **BACKGROUND**

### *MOUNJARO® (TIRZEPATIDE) AND ZEPBOUND® (TIRZEPATIDE)*

17.     On May 13, 2022, the FDA granted Lilly approval to market Mounjaro® (tirzepatide) as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

18.     On November 8, 2023, the FDA granted Lilly approval to market Zepbound® (tirzepatide) as an adjunct to a reduced-calorie diet and increased physical activity for chronic weight management in adults with an initial body mass index (BMI) of:

- 30 $kg/m^2$ or greater (obesity) or

- 27 kg/m$^2$ or greater (overweight) in the presence of at least one weight-related comorbid condition (*e.g.*, hypertension, dyslipidemia, type 2 diabetes mellitus, obstructive sleep apnea or cardiovascular disease).

19. The active pharmaceutical ingredient in Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) is tirzepatide, which is a glucose-dependent insulinotropic polypeptide receptor and glucagon-like peptide-1 receptor agonist.

20. Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) are FDA approved as clear, colorless to slightly yellow, sterile solutions for subcutaneous use. Each single-dose pen (autoinjector) or single-dose vial contains a 0.5 mL solution of 2.5 mg, 5 mg, 7.5 mg, 10 mg, 12.5 mg, or 15 mg of tirzepatide and the following excipients: sodium chloride (4.1 mg), sodium phosphate dibasic heptahydrate (0.7 mg), and water for injection. Each multi-dose vial or single-patient-use KwikPen contains 2.4 mL of solution, which provides 4 doses of 2.5 mg, 5 mg, 7.5 mg, 10 mg, 12.5 mg or 15 mg of tirzepatide per 0.6 mL. Each KwikPen dose contains the following excipients: benzyl alcohol (5.4 mg), glycerin (4.8 mg), phenol (1.08 mg), sodium chloride (1.05 mg), sodium phosphate dibasic heptahydrate (0.8 mg), and water for injection. Hydrochloric acid solution and/or sodium hydroxide solution may have been added to adjust the pH. Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) have a pH of 6.5 to 7.5.

21. Lilly and its affiliates market Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) in the United States pursuant to approved New Drug Application ("NDA") Nos. 215866 and 217806, respectively.

22. Lilly is the holder of approved NDA No. 215866 for Mounjaro® (tirzepatide) and NDA No. 217806 for Zepbound® (tirzepatide).

23.   The '780 Patent, titled "GIP and GLP-1 Co-agonist Compounds," was duly and legally issued on October 25, 2016.  A copy of the '780 Patent is attached as Exhibit A.

24.   Lilly owns the '780 Patent.

25.   The '820 Patent, titled "GIP/GLP1 Agonist Compositions," was duly and legally issued on June 14, 2022.  A copy of the '820 Patent is attached as Exhibit B.

26.   Lilly owns the '820 Patent.

27.   The '623 Patent, titled "GIP/GLP1 Agonist Compositions," was duly and legally issued on March 5, 2024.  A copy of the '623 Patent is attached as Exhibit C.

28.   Lilly owns the '623 Patent.

29.   The '987 Patent, titled "Methods of Using a GIP/GLP1 Co-agonist for Diabetes," was duly and legally issued on May 13, 2025.  A copy of the '987 Patent is attached as Exhibit D.

30.   Lilly owns the '987 Patent.

31.   The '382 Patent, titled "Methods of Using a GIP/GLP1 Co-agonist for Therapy," was duly and legally issued on July 1, 2025.  A copy of the '382 Patent is attached as Exhibit E.

32.   Lilly owns the '382 Patent.

33.   The '755 Patent, titled "GIP/GLP1 Agonist Compositions," was duly and legally issued on October 28, 2025.  A copy of the '755 Patent is attached as Exhibit F.

34.   Lilly owns the '755 Patent.

35.   The '756 Patent, titled "GIP/GLP1 Agonist Compositions," was duly and legally issued on October 28, 2025.  A copy of the '756 Patent is attached as Exhibit G.

36.   Lilly owns the '756 Patent.

37.     The '758 Patent, titled "Methods of Using a GIP/GLP1 Co-agonist for Diabetes," was duly and legally issued on October 28, 2025.  A copy of the '758 Patent is attached as Exhibit H.

38.     Lilly owns the '758 Patent.

39.     The '740 Patent, titled "Methods of Using a GIP/GLP1 Co-agonist for Therapy," was duly and legally issued on May 5, 2026.  A copy of the '740 Patent is attached as Exhibit I.

40.     Lilly owns the '740 Patent.

41.     The '404 Patent, titled "GIP/GLP1 Agonist Compositions," was duly and legally issued on May 19, 2026.  A copy of the '404 Patent is attached as Exhibit J.

42.     Lilly owns the '404 Patent.

43.     Each of the Asserted Patents has been listed in the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for NDA No. 215866 for Mounjaro® (tirzepatide), NDA No. 217806 for Zepbound® (tirzepatide), or both, as applicable. Specifically, the '780 Patent, the '820 Patent, the '382 Patent, the '756 Patent, the '740 Patent, and the '404 Patent are listed in the Orange Book for both Mounjaro® (tirzepatide) and Zepbound® (tirzepatide); the '987 Patent and the '755 Patent are listed in the Orange Book for Mounjaro® (tirzepatide); and the '623 Patent and the '758 Patent are listed in the Orange Book for Zepbound® (tirzepatide).

### *AMNEAL'S ANDAS*

44.     On July 13, 2026, Lilly received Defendants' Notice Letters, which informed Lilly that Defendants submitted Amneal's ANDAs seeking approval to engage in the commercial manufacture, use, or sale of their Proposed ANDA Products prior to the expiration of the Asserted Patents.  According to Defendants' Notice Letters, included within Amneal's ANDAs are certifications pursuant to the FDCA 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV

Certifications") that the Asserted Patents are invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use, or sale of their Proposed ANDA Products.

45.    This action is being filed within 45 days of Lilly's receipt on July 13, 2026 of Defendants' Notice Letters.

46.    Defendants were aware of the Asserted Patents when they submitted Amneal's ANDAs with Paragraph IV Certifications.

47.    Tirzepatide is the active ingredient in Defendants' Proposed ANDA Products.

48.    Amneal's ANDAs refer to and rely upon the NDAs for Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) and contain data that, according to Defendants, demonstrate bioequivalence of their Proposed ANDA Products and Mounjaro® (tirzepatide) and Zepbound® (tirzepatide), *see* 21 U.S.C. § 355(j)(2); 21 C.F.R. § 314.94(a)(7), or Defendants have sought a waiver of the requirement to demonstrate bioequivalence of their Proposed ANDA Products and Mounjaro® (tirzepatide) and/or Zepbound® (tirzepatide).

49.    Upon information and belief, Defendants intend that their Proposed ANDA Products be used as set forth in their Proposed ANDA Products' labels.

## COUNT I
### (Infringement of the '780 Patent)

50.    Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

51.    Defendants' purpose for submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of generic versions of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) prior to the expiration of the '780 Patent.

52.    Defendants' Notice Letters state that Defendants submitted Amneal's ANDAs seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic

version of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) before the expiration of the '780

Patent.

53.    Claim 1 of the '780 Patent covers "A compound of Formula:

YX$_1$EGTFTSDYSIX$_2$LDKIAQKAX$_3$VQWLIAGGPSSGAPPPS; wherein X$_1$ is Aib; X$_2$ is Aib; K

at position 20 is chemically modified through conjugation to the epsilon-amino group of the K

side-chain with ([2-(2-Amino-ethoxy)-ethoxy]-acetyl)$_2$-($\gamma$Glu)$_a$-CO—(CH$_2$)$_b$—CO$_2$H wherein a is

1 to 2 and b is 10 to 20; X$_3$ is Phe or 1-Nal; and the C-terminal amino acid is optionally amidated

as a C-terminal primary amide (SEQ ID NO: 11), or a pharmaceutically acceptable salt thereof."

54.    Defendants' Proposed ANDA Products are covered by one or more claims of the

'780 Patent, including at least claim 1, because they contain tirzepatide, which is a compound with

the structural formula corresponding to the claim:

55.    The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed

ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed

by their proposed labeling for those products, will infringe one or more claims of the '780 Patent,

including at least claim 1, either literally or under the doctrine of equivalents.

56.    Defendants submitted as part of Amneal's ANDAs certifications of the type

described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV),

asserting that the claims of the '780 Patent are invalid, unenforceable, and/or not infringed by the

manufacture, use, offer for sale, and/or sale, of their Proposed ANDA Products.

57. Defendants' Notice Letters do not contest that one or more claims of the '780 Patent cover Defendants' Proposed ANDA Products.

58. Defendants have no reasonable basis to believe that their Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, would not infringe one or more valid claims of the '780 Patent.

59. The purpose of submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '780 Patent.

60. Defendants' submission of Amneal's ANDAs for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '780 Patent was an act of infringement of the '780 Patent under 35 U.S.C. § 271(e)(2)(A).

61. Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto, *i.e.*, prior to the expiration of the '780 Patent, in violation of 35 U.S.C. § 271(a).

62. Defendants have knowledge of the '780 Patent at least because the '780 Patent is listed in the FDA's Orange Book for Lilly's Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) drug products. Defendants also included the '780 Patent in their Notice Letters and thus were aware of it prior to this litigation. Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their

Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto.

63.    Defendants plan and intend to, and will, actively induce infringement of the '780 Patent when Amneal's ANDAs and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '780 Patent, in violation of 35 U.S.C. § 271(b). Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval.  By way of example, Defendants will instruct, encourage, and knowingly cause third parties to make, use, offer for sale, sell and/or import the Proposed ANDA Products and thereby infringe the '780 Patent.

64.    Upon information and belief, Defendants know that their Proposed ANDA Products are especially made or adapted for use in patented methods of the '780 Patent, and that their Proposed ANDA Products are not suitable for substantial noninfringing use.  Upon information and belief, Defendants plan and intend to, and will, contribute to infringement of the '780 Patent immediately and imminently upon approval of Amneal's ANDAs, in violation of 35 U.S.C. § 271(c).

65.    The foregoing actions by Defendants constitute and/or will constitute infringement of the '780 Patent, active inducement of infringement of the '780 Patent, and contribution to the infringement by others of the '780 Patent, either literally or under the doctrine of equivalents.

66.    Unless Defendants are enjoined from infringing the '780 Patent, actively inducing infringement of the '780 Patent, and contributing to the infringement by others of the '780 Patent, Lilly will suffer irreparable injury.  Lilly has no adequate remedy at law.

## COUNT II
### (Infringement of the '820 Patent)

67.    Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

12

68. Defendants' purpose for submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of generic versions of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) prior to the expiration of the '820 Patent.

69. Defendants' Notice Letters state that Defendants submitted Amneal's ANDAs seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic version of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) before the expiration of the '820 Patent.

70. Claim 1 of the '820 Patent covers "A pharmaceutical composition comprising tirzepatide, or a pharmaceutically acceptable salt thereof; NaCl at a concentration from 6.2 mg/mL to 9.5 mg/mL; and dibasic sodium phosphate."

71. Defendants' Proposed ANDA Products are covered by one or more claims of the '820 Patent, including at least claim 1, because they are pharmaceutical compositions comprising tirzepatide, or a pharmaceutically acceptable salt thereof; NaCl at a concentration from 6.2 mg/mL to 9.5 mg/mL; and dibasic sodium phosphate.

72. The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, will infringe one or more claims of the '820 Patent, including at least claim 1, either literally or under the doctrine of equivalents.

73. Defendants submitted as part of Amneal's ANDAs certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), asserting that the claims of the '820 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, and/or sale, of their Proposed ANDA Products.

74. Defendants' Notice Letters do not contest that one or more claims of the '820 Patent cover Defendants' Proposed ANDA Products.

75. Defendants have no reasonable basis to believe that their Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, would not infringe one or more valid claims of the '820 Patent.

76. The purpose of submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '820 Patent.

77. Defendants' submission of Amneal's ANDAs for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '820 Patent was an act of infringement of the '820 Patent under 35 U.S.C. § 271(e)(2)(A).

78. Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto, *i.e.*, prior to the expiration of the '820 Patent, in violation of 35 U.S.C. § 271(a).

79. Defendants have knowledge of the '820 Patent at least because the '820 Patent is listed in the FDA's Orange Book for Lilly's Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) drug products. Defendants also included the '820 Patent in their Notice Letters and thus were aware of it prior to this litigation. Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their

Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto.

80.     Defendants plan and intend to, and will, actively induce infringement of the '820 Patent when Amneal's ANDAs and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '820 Patent, in violation of 35 U.S.C. § 271(b). Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval.  By way of example, Defendants will instruct, encourage, and knowingly cause third parties to make, use, offer for sale, sell and/or import the Proposed ANDA Products and thereby infringe the '820 Patent.

81.     Upon information and belief, Defendants know that their Proposed ANDA Products are especially made or adapted for use in patented methods of the '820 Patent, and that their Proposed ANDA Products are not suitable for substantial noninfringing use.  Upon information and belief, Defendants plan and intend to, and will, contribute to infringement of the '820 Patent immediately and imminently upon approval of Amneal's ANDAs, in violation of 35 U.S.C. § 271(c).

82.     The foregoing actions by Defendants constitute and/or will constitute infringement of the '820 Patent, active inducement of infringement of the '820 Patent, and contribution to the infringement by others of the '820 Patent, either literally or under the doctrine of equivalents.

83.     Unless Defendants are enjoined from infringing the '820 Patent, actively inducing infringement of the '820 Patent, and contributing to the infringement by others of the '820 Patent, Lilly will suffer irreparable injury.  Lilly has no adequate remedy at law.

## COUNT III
### (Infringement of the '623 Patent)

84.     Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

85.    Defendants' purpose for submitting ANDA No. 221732 was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of a generic version of Zepbound® (tirzepatide) prior to the expiration of the '623 Patent.

86.    Defendants' Notice Letter for ANDA No. 221732 states that Defendants submitted ANDA No. 221732 seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic version of Zepbound® (tirzepatide) ("Proposed ANDA No. 221732 Product") before the expiration of the '623 Patent.

87.    Claim 1 of the '623 Patent covers "A method of treating obesity comprising administering to a human in need thereof an effective dose of a pharmaceutical composition comprising tirzepatide, or pharmaceutically acceptable salt thereof, wherein the tirzepatide concentration is from about 5 mg/mL to about 30 mg/mL; dibasic sodium phosphate is from about 0.67 to about 2.68 mg/mL; NaCl at a concentration from about 6.2 mg/mL to about 9.5 mg/mL; and optionally comprising from about 3.0 mg/mL to about 7.0 mg/mL phenol."

88.    Defendants' Proposed ANDA No. 221732 Product is covered by one or more claims of the '623 Patent, including at least claim 1, because Defendants are seeking proposed labeling that instructs and encourages treating obesity by administering to a human in need thereof an effective dose of a pharmaceutical composition comprising tirzepatide, or pharmaceutically acceptable salt thereof, wherein the tirzepatide concentration is from about 5 mg/mL to about 30 mg/mL; dibasic sodium phosphate is from about 0.67 to about 2.68 mg/mL; NaCl at a concentration from about 6.2 mg/mL to about 9.5 mg/mL; and optionally comprising from about 3.0 mg/mL to about 7.0 mg/mL phenol.

89.    The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed ANDA No. 221732 Product, or the use of their Proposed ANDA No. 221732 Product in

16

accordance with and as directed by their proposed labeling for that product, will infringe one or more claims of the '623 Patent, including at least claim 1, either literally or under the doctrine of equivalents.

90. Defendants submitted as part of ANDA No. 221732 a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), asserting that the claims of the '623 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, and/or sale, of their Proposed ANDA No. 221732 Product.

91. Defendants' Notice Letter for ANDA No. 221732 does not contest that the claims of the '623 Patent cover Defendants' Proposed ANDA No. 221732 Product.

92. Defendants have no reasonable basis to believe that their Proposed ANDA No. 221732 Product, or the use of their Proposed ANDA No. 221732 Product in accordance with and as directed by their proposed labeling for that product, would not infringe one or more valid claims of the '623 Patent.

93. The purpose of submitting ANDA No. 221732 was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of Defendants' Proposed ANDA No. 221732 Product prior to the expiration of the '623 Patent.

94. Defendants' submission of ANDA No. 221732 for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA No. 221732 Product prior to the expiration of the '623 Patent was an act of infringement of the '623 Patent under 35 U.S.C. § 271(e)(2)(A).

95. Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA No. 221732

17

Product and the proposed labeling therefor immediately and imminently upon the approval of ANDA No. 221732 and any amendments thereto, *i.e.*, prior to the expiration of the '623 Patent, in violation of 35 U.S.C. § 271(b) and (c), and with knowledge and intent to cause infringement by patients and healthcare providers under 35 U.S.C. § 271(a).

96.    Defendants have knowledge of the '623 Patent at least because the '623 Patent is listed in the FDA's Orange Book for Lilly's Zepbound® (tirzepatide) drug product. Defendants also included the '623 Patent in their Notice Letter for ANDA No. 221732 and thus were aware of it prior to this litigation. Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their Proposed ANDA No. 221732 Product and the proposed labeling therefor immediately and imminently upon the approval of ANDA No. 221732 and any amendments thereto.

97.    Upon information and belief, Defendants plan and intend to, and will, sell their Proposed ANDA No. 221732 Product with instructions and labeling that instruct and encourage treating obesity by the claimed method of administering to a human in need thereof an effective dose of a pharmaceutical composition comprising tirzepatide, or pharmaceutically acceptable salt thereof, wherein the tirzepatide concentration is from about 5 mg/mL to about 30 mg/mL; dibasic sodium phosphate is from about 0.67 to about 2.68 mg/mL; NaCl at a concentration from about 6.2 mg/mL to about 9.5 mg/mL; and optionally comprising from about 3.0 mg/mL to about 7.0 mg/mL phenol.

98.    Healthcare providers and/or patients will treat obesity by administering to a human in need thereof an effective dose of a pharmaceutical composition comprising tirzepatide, or pharmaceutically acceptable salt thereof, wherein the tirzepatide concentration is from about 5 mg/mL to about 30 mg/mL; dibasic sodium phosphate is from about 0.67 to about 2.68 mg/mL;

18

NaCl at a concentration from about 6.2 mg/mL to about 9.5 mg/mL; and optionally comprising from about 3.0 mg/mL to about 7.0 mg/mL phenol, based on the instructions and labeling provided by Defendants in the proposed labeling for their Proposed ANDA No. 221732 Product.

99.     By knowingly including the aforementioned instructions and labeling with Defendants' Proposed ANDA No. 221732 Product, Defendants plan and intend to, and will, actively induce infringement of the '623 Patent when ANDA No. 221732 and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '623 Patent, in violation of 35 U.S.C. § 271(b).  Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval.

100.    Upon information and belief, Defendants know that their Proposed ANDA No. 221732 Product is especially made or adapted for use in patented methods of the '623 Patent, and that their Proposed ANDA No. 221732 Product is not suitable for substantial noninfringing use. Upon information and belief, Defendants plan and intend to, and will, contribute to infringement of the '623 Patent immediately and imminently upon approval of ANDA No. 221732, in violation of 35 U.S.C. § 271(c).

101.    The foregoing actions by Defendants constitute and/or will constitute infringement of the '623 Patent, active inducement of infringement of the '623 Patent, and contribution to the infringement by others of the '623 Patent, either literally or under the doctrine of equivalents.

102.    Unless Defendants are enjoined from infringing the '623 Patent, actively inducing infringement of the '623 Patent, and contributing to the infringement by others of the '623 Patent, Lilly will suffer irreparable injury.  Lilly has no adequate remedy at law.

## <u>COUNT IV</u>
### (Infringement of the '987 Patent)

103.    Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

19

104.    Defendants' purpose for submitting ANDA No. 221733 was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of a generic version of Mounjaro® (tirzepatide) prior to the expiration of the '987 Patent.

105.    Defendants' Notice Letter for ANDA No. 221733 states that Defendants submitted ANDA No. 221733 seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic version of Mounjaro® (tirzepatide) ("Proposed ANDA No. 221733 Product") before the expiration of the '987 Patent.

106.    Claim 1 of the '987 Patent covers "A method of treating type 2 diabetes in a patient in need thereof, comprising: a) administering to said patient a first dose of a GIP:GLP-1 Peptide, or a pharmaceutically acceptable salt thereof, having a GIP:GLP-1 receptor agonist potency ratio that is greater than or equal to the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 62 and less than the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO:55, wherein the GIP:GLP-1 agonist potency ratio is measured after a 60 minute incubation using a casein cAMP assay normalized against GIP and GLP-1; and thereafter b) administering to said patient a second dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof, for a minimum of about two weeks; and thereafter c) administering to said patient a third dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof, for a minimum of about two weeks; and thereafter d) administering to said patient a fourth dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof; wherein the first dose is about 25% of the fourth dose, the second dose is about 50% of the fourth dose and the third dose is about 75% of the fourth dose."

107.    Defendants' Proposed ANDA No. 221733 Product is covered by one or more claims of the '987 Patent, including at least claim 1, because Defendants are seeking proposed

labeling that instructs and encourages treating type 2 diabetes in a patient in need of such treatment by a) administering to said patient a first dose of a GIP:GLP-1 Peptide, or a pharmaceutically acceptable salt thereof, having a GIP:GLP-1 receptor agonist potency ratio that is greater than or equal to the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 62 and less than the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO:55, wherein the GIP:GLP-1 agonist potency ratio is measured after a 60 minute incubation using a casein cAMP assay normalized against GIP and GLP-1; and thereafter b) administering to said patient a second dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof, for a minimum of about two weeks; and thereafter c) administering to said patient a third dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof, for a minimum of about two weeks; and thereafter d) administering to said patient a fourth dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof; wherein the first dose is about 25% of the fourth dose, the second dose is about 50% of the fourth dose and the third dose is about 75% of the fourth dose.

108.    The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed ANDA No. 221733 Product, or the use of their Proposed ANDA No. 221733 Product in accordance with and as directed by their proposed labeling for that product, will infringe one or more claims of the '987 Patent, including at least claim 1, either literally or under the doctrine of equivalents.

109.    Defendants submitted as part of ANDA No. 221733 a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), asserting that the claims of the '987 Patent are invalid, unenforceable, and/or not infringed by the

commercial manufacture, use, offer for sale, and/or sale, of Defendants' Proposed ANDA No. 221733 Product.

110.    Defendants' Notice Letter for ANDA No. 221733 does not contest that the claims of the '987 Patent cover Defendants' Proposed ANDA No. 221733 Product.

111.    Defendants have no reasonable basis to believe that their Proposed ANDA No. 221733 Product, or the use of their Proposed ANDA No. 221733 Product in accordance with and as directed by their proposed labeling for that product, would not infringe one or more valid claims of the '987 Patent.

112.    The purpose of submitting ANDA No. 221733 was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of Defendants' Proposed ANDA No. 221733 Product prior to the expiration of the '987 Patent.

113.    Defendants' submission of ANDA No. 221733 for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA No. 221733 Product prior to the expiration of the '987 Patent was an act of infringement of the '987 Patent under 35 U.S.C. § 271(e)(2)(A).

114.    Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA No. 221733 Product and the proposed labeling therefor immediately and imminently upon the approval of ANDA No. 221733 and any amendments thereto, *i.e.*, prior to the expiration of the '987 Patent, in violation of 35 U.S.C. § 271(b) and (c), and with knowledge and intent to cause infringement by patients and healthcare providers under 35 U.S.C. § 271(a).

115.    Defendants have knowledge of the '987 Patent at least because the '987 Patent is listed in the FDA's Orange Book for Lilly's Mounjaro® (tirzepatide) drug product.  Defendants

22

also included the '987 Patent in their Notice Letter for ANDA No. 221733 and thus were aware of it prior to this litigation.  Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their Proposed ANDA No. 221733 Product and the proposed labeling therefor immediately and imminently upon the approval of ANDA No. 221733 and any amendments thereto.

116.    Upon information and belief, Defendants plan and intend to, and will, sell their Proposed ANDA No. 221733 Product with instructions and labeling that instruct and encourage treating type 2 diabetes in a patient in need of such treatment by a) administering to said patient a first dose of a GIP:GLP-1 Peptide, or a pharmaceutically acceptable salt thereof, having a GIP:GLP-1 receptor agonist potency ratio that is greater than or equal to the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 62 and less than the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO:55, wherein the GIP:GLP-1 agonist potency ratio is measured after a 60 minute incubation using a casein cAMP assay normalized against GIP and GLP-1; and thereafter b) administering to said patient a second dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof, for a minimum of about two weeks; and thereafter c) administering to said patient a third dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof, for a minimum of about two weeks; and thereafter d) administering to said patient a fourth dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof; wherein the first dose is about 25% of the fourth dose, the second dose is about 50% of the fourth dose and the third dose is about 75% of the fourth dose.

117.    Healthcare providers and/or patients will treat type 2 diabetes in a patient in need of such treatment by a) administering to said patient a first dose of a GIP:GLP-1 Peptide, or a pharmaceutically acceptable salt thereof, having a GIP:GLP-1 receptor agonist potency ratio that

is greater than or equal to the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 62 and less than the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO:55, wherein the GIP:GLP-1 agonist potency ratio is measured after a 60 minute incubation using a casein cAMP assay normalized against GIP and GLP-1; and thereafter b) administering to said patient a second dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof, for a minimum of about two weeks; and thereafter c) administering to said patient a third dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof, for a minimum of about two weeks; and thereafter d) administering to said patient a fourth dose of the GIP:GLP-1 Peptide, or pharmaceutically acceptable salt thereof; wherein the first dose is about 25% of the fourth dose, the second dose is about 50% of the fourth dose and the third dose is about 75% of the fourth dose, based on the instructions and labeling provided by Defendants in the proposed labeling for their Proposed ANDA No. 221733 Product.

118.    By knowingly including the aforementioned instructions and labeling with Defendants' Proposed ANDA No. 221733 Product, Defendants plan and intend to, and will, actively induce infringement of the '987 Patent when ANDA No. 221733 and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '987 Patent, in violation of 35 U.S.C. § 271(b).  Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval.

119.    Upon information and belief, Defendants know that their Proposed ANDA No. 221733 Product is especially made or adapted for use in patented methods of the '987 Patent, and that their Proposed ANDA No. 221733 Product is not suitable for substantial noninfringing use. Upon information and belief, Defendants plan and intend to, and will, contribute to infringement

24

of the '987 Patent immediately and imminently upon approval of ANDA No. 221733, in violation of 35 U.S.C. § 271(c).

120.    The foregoing actions by Defendants constitute and/or will constitute infringement of the '987 Patent, active inducement of infringement of the '987 Patent, and contribution to the infringement by others of the '987 Patent, either literally or under the doctrine of equivalents.

121.    Unless Defendants are enjoined from infringing the '987 Patent, actively inducing infringement of the '987 Patent, and contributing to the infringement by others of the '987 Patent, Lilly will suffer irreparable injury.  Lilly has no adequate remedy at law.

**COUNT V**
**(Infringement of the '382 Patent)**

122.    Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

123.    Defendants' purpose for submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of generic versions of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) prior to the expiration of the '382 Patent.

124.    Defendants' Notice Letters state that Defendants submitted Amneal's ANDAs seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic version of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) before the expiration of the '382 Patent.

125.    Claim 1 of the '382 Patent covers "A method of treating type 2 diabetes in a patient in need thereof, comprising: administering an escalation dose about once weekly for a minimum of at least about two weeks and thereafter administering a maintenance dose about once weekly for a minimum of at least about two weeks; wherein the escalation dose is selected from the group consisting of about 2.5 mg, about 7.5 mg and about 12.5 mg of tirzepatide, or a pharmaceutically

25

acceptable salt thereof; and wherein the maintenance dose is selected from the group consisting of about 5.0 mg, about 10.0 mg and about 15.0 mg of tirzepatide, or a pharmaceutically acceptable salt thereof."

126.    Defendants' Proposed ANDA No. 221733 Product is covered by one or more claims of the '382 Patent, including at least claim 1, because Defendants are seeking proposed labeling that instructs and encourages treating type 2 diabetes in a patient in need of such treatment by administering an escalation dose about once weekly for a minimum of at least about two weeks and thereafter administering a maintenance dose about once weekly for a minimum of at least about two weeks; wherein the escalation dose is selected from the group consisting of about 2.5 mg, about 7.5 mg and about 12.5 mg of tirzepatide, or a pharmaceutically acceptable salt thereof; and wherein the maintenance dose is selected from the group consisting of about 5.0 mg, about 10.0 mg and about 15.0 mg of tirzepatide, or a pharmaceutically acceptable salt thereof.

127.    Claim 11 of the '382 Patent covers "A method to improve weight management, in a patient in need thereof, comprising: administering an escalation dose about once weekly for a minimum of at least about two weeks and thereafter administering a maintenance dose about once weekly for a minimum of at least about two weeks; wherein the escalation dose is selected from the group consisting of about 2.5 mg, about 7.5 mg and about 12.5 mg of tirzepatide, or a pharmaceutically acceptable salt thereof; and wherein the maintenance dose is selected from the group consisting of about 5.0 mg, about 10.0 mg and about 15.0 mg of tirzepatide, or a pharmaceutically acceptable salt thereof."

128.    Defendants' Proposed ANDA No. 221732 Product is covered by one or more claims of the '382 Patent, including at least claim 11, because Defendants are seeking proposed labeling that instructs and encourages improving weight management in a patient in need thereof

26

by administering an escalation dose about once weekly for a minimum of at least about two weeks and thereafter administering a maintenance dose about once weekly for a minimum of at least about two weeks; wherein the escalation dose is selected from the group consisting of about 2.5 mg, about 7.5 mg and about 12.5 mg of tirzepatide, or a pharmaceutically acceptable salt thereof; and wherein the maintenance dose is selected from the group consisting of about 5.0 mg, about 10.0 mg and about 15.0 mg of tirzepatide, or a pharmaceutically acceptable salt thereof.

129.    The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, will infringe one or more claims of the '382 Patent, including at least claims 1 and 11, either literally or under the doctrine of equivalents.

130.    Defendants submitted as part of Amneal's ANDAs certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), asserting that the claims of the '382 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, and/or sale, of their Proposed ANDA Products.

131.    Defendants' Notice Letters do not contest that the claims of the '382 Patent cover Defendants' Proposed ANDA Products.

132.    Defendants have no reasonable basis to believe that their Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, would not infringe one or more valid claims of the '382 Patent.

133.    The purpose of submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '382 Patent.

27

134.   Defendants' submission of Amneal's ANDAs for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '382 Patent was an act of infringement of the '382 Patent under 35 U.S.C. § 271(e)(2)(A).

135.   Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto, *i.e.*, prior to the expiration of the '382 Patent, in violation of 35 U.S.C. § 271(b) and (c), and with knowledge and intent to cause infringement by patients and healthcare providers under 35 U.S.C. § 271(a).

136.   Defendants have knowledge of the '382 Patent at least because the '382 Patent is listed in the FDA's Orange Book for Lilly's Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) drug products.  Defendants also included the '382 Patent in their Notice Letters and thus were aware of it prior to this litigation.  Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto.

137.   Upon information and belief, Defendants plan and intend to, and will, sell their Proposed ANDA No. 221733 Product with instructions and labeling that instruct and encourage treating type 2 diabetes in a patient in need of such treatment by administering an escalation dose about once weekly for a minimum of at least about two weeks and thereafter administering a maintenance dose about once weekly for a minimum of at least about two weeks; wherein the escalation dose is selected from the group consisting of about 2.5 mg, about 7.5 mg and about 12.5

mg of tirzepatide, or a pharmaceutically acceptable salt thereof; and wherein the maintenance dose is selected from the group consisting of about 5.0 mg, about 10.0 mg and about 15.0 mg of tirzepatide, or a pharmaceutically acceptable salt thereof.

138.    Healthcare providers and/or patients will treat type 2 diabetes in a patient in need of such treatment by administering an escalation dose about once weekly for a minimum of at least about two weeks and thereafter administering a maintenance dose about once weekly for a minimum of at least about two weeks; wherein the escalation dose is selected from the group consisting of about 2.5 mg, about 7.5 mg and about 12.5 mg of tirzepatide, or a pharmaceutically acceptable salt thereof; and wherein the maintenance dose is selected from the group consisting of about 5.0 mg, about 10.0 mg and about 15.0 mg of tirzepatide, or a pharmaceutically acceptable salt thereof, based on the instructions and labeling provided by Defendants in the proposed labeling for their Proposed ANDA No. 221733 Product.

139.    Upon information and belief, Defendants plan and intend to, and will, sell their Proposed ANDA No. 221732 Product with instructions and labeling that instruct and encourage improving weight management in a patient in need thereof by administering an escalation dose about once weekly for a minimum of at least about two weeks and thereafter administering a maintenance dose about once weekly for a minimum of at least about two weeks; wherein the escalation dose is selected from the group consisting of about 2.5 mg, about 7.5 mg and about 12.5 mg of tirzepatide, or a pharmaceutically acceptable salt thereof; and wherein the maintenance dose is selected from the group consisting of about 5.0 mg, about 10.0 mg and about 15.0 mg of tirzepatide, or a pharmaceutically acceptable salt thereof.

140.    Healthcare providers and/or patients will improve weight management in a patient in need thereof by administering an escalation dose about once weekly for a minimum of at least

29

about two weeks and thereafter administering a maintenance dose about once weekly for a minimum of at least about two weeks; wherein the escalation dose is selected from the group consisting of about 2.5 mg, about 7.5 mg and about 12.5 mg of tirzepatide, or a pharmaceutically acceptable salt thereof; and wherein the maintenance dose is selected from the group consisting of about 5.0 mg, about 10.0 mg and about 15.0 mg of tirzepatide, or a pharmaceutically acceptable salt thereof, based on the instructions and labeling provided by Defendants in the proposed labeling for their Proposed ANDA No. 221732 Product.

141. By knowingly including the aforementioned instructions and labeling with Defendants' Proposed ANDA Products, Defendants plan and intend to, and will, actively induce infringement of the '382 Patent when Amneal's ANDAs and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '382 Patent, in violation of 35 U.S.C. § 271(b). Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval.

142. Upon information and belief, Defendants know that their Proposed ANDA Products are especially made or adapted for use in patented methods of the '382 Patent, and that their Proposed ANDA Products are not suitable for substantial noninfringing use. Upon information and belief, Defendants plan and intend to, and will, contribute to infringement of the '382 Patent immediately and imminently upon approval of Amneal's ANDAs, in violation of 35 U.S.C. § 271(c).

143. The foregoing actions by Defendants constitute and/or will constitute infringement of the '382 Patent, active inducement of infringement of the '382 Patent, and contribution to the infringement by others of the '382 Patent, either literally or under the doctrine of equivalents.

144.    Unless Defendants are enjoined from infringing the '382 Patent, actively inducing infringement of the '382 Patent, and contributing to the infringement by others of the '382 Patent, Lilly will suffer irreparable injury.  Lilly has no adequate remedy at law.

### COUNT VI
### (Infringement of the '755 Patent)

145.    Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

146.    Defendants' purpose for submitting ANDA No. 221733 was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of a generic version of Mounjaro® (tirzepatide) prior to the expiration of the '755 Patent.

147.    Defendants' Notice Letter for ANDA No. 221733 states that Defendants submitted ANDA No. 221733 seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic version of Mounjaro® (tirzepatide) before the expiration of the '755 Patent.

148.    Claim 1 of the '755 Patent covers "A method of treating diabetes comprising administering to a human in need thereof an effective dose of a pharmaceutical composition comprising tirzepatide, or pharmaceutically acceptable salt thereof, at a concentration from about 5 mg/mL to about 30 mg/ml; dibasic sodium phosphate at a concentration from about 0.67 to about 2.68 mg/ml; NaCl at a concentration from about 6.2 mg/ml to about 9.5 mg/ml; and optionally comprising from about 3.0 mg/ml to about 7.0 mg/ml phenol."

149.    Defendants' Proposed ANDA No. 221733 Product is covered by one or more claims of the '755 Patent, including at least claim 1, because Defendants are seeking proposed labeling that instructs and encourages treating diabetes by administering to a human in need of such treatment an effective dose of a pharmaceutical composition comprising tirzepatide, or pharmaceutically acceptable salt thereof, at a concentration from about 5 mg/mL to about 30 mg/ml; dibasic sodium phosphate at a concentration from about 0.67 to about 2.68 mg/ml; NaCl

31

at a concentration from about 6.2 mg/ml to about 9.5 mg/ml; and optionally comprising from about 3.0 mg/ml to about 7.0 mg/ml phenol.

150.    The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed ANDA No. 221733 Product, or the use of their Proposed ANDA No. 221733 Product in accordance with and as directed by their proposed labeling for that product, will infringe one or more claims of the '755 Patent, including at least claim 1, either literally or under the doctrine of equivalents.

151.    Defendants submitted as part of ANDA No. 221733 a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), asserting that the claims of the '755 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, and/or sale, of Defendants' Proposed ANDA No. 221733 Product.

152.    Defendants' Notice Letter for ANDA No. 221733 does not contest that the claims of the '755 Patent cover Defendants' Proposed ANDA No. 221733 Product.

153.    Defendants have no reasonable basis to believe that their Proposed ANDA No. 221733 Product, or the use of their Proposed ANDA No. 221733 Product in accordance with and as directed by their proposed labeling for that product, would not infringe one or more valid claims of the '755 Patent.

154.    The purpose of submitting ANDA No. 221733 was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of Defendants' Proposed ANDA No. 221733 Product prior to the expiration of the '755 Patent.

155.    Defendants' submission of ANDA No. 221733 for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of

their Proposed ANDA No. 221733 Product prior to the expiration of the '755 Patent was an act of infringement of the '755 Patent under 35 U.S.C. § 271(e)(2)(A).

156.    Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA No. 221733 Product and the proposed labeling therefor immediately and imminently upon the approval of ANDA No. 221733 and any amendments thereto, *i.e.*, prior to the expiration of the '755 Patent, in violation of 35 U.S.C. § 271(b) and (c), and with knowledge and intent to cause infringement by patients and healthcare providers under 35 U.S.C. § 271(a).

157.    Defendants have knowledge of the '755 Patent at least because the '755 Patent is listed in the FDA's Orange Book for Lilly's Mounjaro® (tirzepatide) drug product.  Defendants also included the '755 Patent in their Notice Letter for ANDA No. 221733 and thus were aware of it prior to this litigation.  Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their Proposed ANDA No. 221733 Product and the proposed labeling therefor immediately and imminently upon the approval of ANDA No. 221733 and any amendments thereto.

158.    Upon information and belief, Defendants plan and intend to, and will, sell their Proposed ANDA No. 221733 Product with instructions and labeling that instruct and encourage treating diabetes by administering to a human in need of such treatment an effective dose of a pharmaceutical composition comprising tirzepatide, or pharmaceutically acceptable salt thereof, at a concentration from about 5 mg/mL to about 30 mg/ml; dibasic sodium phosphate at a concentration from about 0.67 to about 2.68 mg/ml; NaCl at a concentration from about 6.2 mg/ml to about 9.5 mg/ml; and optionally comprising from about 3.0 mg/ml to about 7.0 mg/ml phenol.

159.    Healthcare providers and/or patients will treat diabetes by administering to a human in need of such treatment an effective dose of a pharmaceutical composition comprising tirzepatide, or pharmaceutically acceptable salt thereof, at a concentration from about 5 mg/mL to about 30 mg/ml; dibasic sodium phosphate at a concentration from about 0.67 to about 2.68 mg/ml; NaCl at a concentration from about 6.2 mg/ml to about 9.5 mg/ml; and optionally comprising from about 3.0 mg/ml to about 7.0 mg/ml phenol, based on the instructions and labeling provided by Defendants in the proposed labeling for their Proposed ANDA No. 221733 Product.

160.    By knowingly including the aforementioned instructions and labeling with Defendants' Proposed ANDA No. 221733 Product, Defendants plan and intend to, and will, actively induce infringement of the '755 Patent when ANDA No. 221733 and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '755 Patent, in violation of 35 U.S.C. § 271(b).  Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval.

161.    Upon information and belief, Defendants know that their Proposed ANDA No. 221733 Product is especially made or adapted for use in patented methods of the '755 Patent, and that their Proposed ANDA No. 221733 Product is not suitable for substantial noninfringing use. Upon information and belief, Defendants plan and intend to, and will, contribute to infringement of the '755 Patent immediately and imminently upon approval of ANDA No. 221733, in violation of 35 U.S.C. § 271(c).

162.    The foregoing actions by Defendants constitute and/or will constitute infringement of the '755 Patent, active inducement of infringement of the '755 Patent, and contribution to the infringement by others of the '755 Patent, either literally or under the doctrine of equivalents.

163.    Unless Defendants are enjoined from infringing the '755 Patent, actively inducing infringement of the '755 Patent, and contributing to the infringement by others of the '755 Patent, Lilly will suffer irreparable injury.  Lilly has no adequate remedy at law.

## COUNT VII
### (Infringement of the '756 Patent)

164.    Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

165.    Defendants' purpose for submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of generic versions of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) prior to the expiration of the '756 Patent.

166.    Defendants' Notice Letters state that Defendants submitted Amneal's ANDAs seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic version of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) before the expiration of the '756 Patent.

167.    Claim 1 of the '756 Patent covers "A pharmaceutical composition comprising: (a) tirzepatide, or a pharmaceutically acceptable salt thereof; and (b) from about 6.2 mg/mL to about 9.5 mg/mL of NaCl, wherein the pharmaceutical composition has a pH of from about 6.5 to about 7.5."

168.    Defendants' Proposed ANDA Products are covered by one or more claims of the '756 Patent, including at least claim 1, because they are pharmaceutical compositions comprising: (a) tirzepatide, or a pharmaceutically acceptable salt thereof; and (b) from about 6.2 mg/mL to about 9.5 mg/mL of NaCl, wherein the pharmaceutical composition has a pH of from about 6.5 to about 7.5.

169.    The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, will infringe one or more claims of the '756 Patent, including at least claim 1, either literally or under the doctrine of equivalents.

170.    Defendants submitted as part of Amneal's ANDAs certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), asserting that the claims of the '756 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, and/or sale, of their Proposed ANDA Products.

171.    Defendants' Notice Letters do not contest that one or more claims of the '756 Patent cover Defendants' Proposed ANDA Products.

172.    Defendants have no reasonable basis to believe that their Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, would not infringe one or more valid claims of the '756 Patent.

173.    The purpose of submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '756 Patent.

174.    Defendants' submission of Amneal's ANDAs for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '756 Patent was an act of infringement of the '756 Patent under 35 U.S.C. § 271(e)(2)(A).

175.    Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products and

36

the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto, *i.e.*, prior to the expiration of the '756 Patent, in violation of 35 U.S.C. § 271(a).

176.    Defendants have knowledge of the '756 Patent at least because the '756 Patent is listed in the FDA's Orange Book for Lilly's Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) drug products. Defendants also included the '756 Patent in their Notice Letters and thus were aware of it prior to this litigation. Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto.

177.    Defendants plan and intend to, and will, actively induce infringement of the '756 Patent when Amneal's ANDAs and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '756 Patent, in violation of 35 U.S.C. § 271(b). Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval. By way of example, Defendants will instruct, encourage, and knowingly cause third parties to make, use, offer for sale, sell and/or import the Proposed ANDA Products and thereby infringe the '756 Patent.

178.    Upon information and belief, Defendants know that their Proposed ANDA Products are especially made or adapted for use in patented methods of the '756 Patent, and that their Proposed ANDA Products are not suitable for substantial noninfringing use. Upon information and belief, Defendants plan and intend to, and will, contribute to infringement of the '756 Patent immediately and imminently upon approval of Amneal's ANDAs, in violation of 35 U.S.C. § 271(c).

37

179. The foregoing actions by Defendants constitute and/or will constitute infringement of the '756 Patent, active inducement of infringement of the '756 Patent, and contribution to the infringement by others of the '756 Patent, either literally or under the doctrine of equivalents.

180. Unless Defendants are enjoined from infringing the '756 Patent, actively inducing infringement of the '756 Patent, and contributing to the infringement by others of the '756 Patent, Lilly will suffer irreparable injury. Lilly has no adequate remedy at law.

**COUNT VIII**
**(Infringement of the '758 Patent)**

181. Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

182. Defendants' purpose for submitting ANDA No. 221732 was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of a generic version of Zepbound® (tirzepatide) prior to the expiration of the '758 Patent.

183. Defendants' Notice Letter for ANDA No. 221732 states that Defendants submitted ANDA No. 221732 seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic version of Zepbound® (tirzepatide) before the expiration of the '758 Patent.

184. Claim 1 of the '758 Patent covers "A method of improving weight management in a patient in need thereof, comprising: a) administering to said patient a first dose of a GIP:GLP-1 Peptide having a GIP:GLP-1 receptor agonist potency ratio that is greater than or equal to the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 56 and less than the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 49, wherein the GIP:GLP-1 agonist potency ratio is measured after a 60 minute incubation using a casein cAMP assay normalized against GIP and GLP-1; and thereafter b) administering to said patient a second dose of the GIP:GLP-1 Peptide for a minimum of about two weeks; and thereafter c) administering to said patient a third dose of the GIP:GLP-1 Peptide for a minimum

of about two weeks; and thereafter d) administering to said patient a fourth dose of the GIP:GLP-1 Peptide; wherein the first dose is about 25% of the fourth dose, the second dose is about 50% of the fourth dose and the third dose is about 75% of the fourth dose."

185. Defendants' Proposed ANDA No. 221732 Product is covered by one or more claims of the '758 Patent, including at least claim 1, because Defendants are seeking proposed labeling that instructs and encourages improving weight management in a patient in need of such improvement by a) administering to said patient a first dose of a GIP:GLP-1 Peptide having a GIP:GLP-1 receptor agonist potency ratio that is greater than or equal to the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 56 and less than the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 49, wherein the GIP:GLP-1 agonist potency ratio is measured after a 60 minute incubation using a casein cAMP assay normalized against GIP and GLP-1; and thereafter b) administering to said patient a second dose of the GIP:GLP-1 Peptide for a minimum of about two weeks; and thereafter c) administering to said patient a third dose of the GIP:GLP-1 Peptide for a minimum of about two weeks; and thereafter d) administering to said patient a fourth dose of the GIP:GLP-1 Peptide; wherein the first dose is about 25% of the fourth dose, the second dose is about 50% of the fourth dose and the third dose is about 75% of the fourth dose.

186. The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed ANDA No. 221732 Product, or the use of their Proposed ANDA No. 221732 Product in accordance with and as directed by their proposed labeling for that product, will infringe one or more claims of the '758 Patent, including at least claim 1, either literally or under the doctrine of equivalents.

187.    Defendants submitted as part of ANDA No. 221732 a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), asserting that the claims of the '758 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, and/or sale, of their Proposed ANDA No. 221732 Product.

188.    Defendants' Notice Letter for ANDA No. 221732 does not contest that the claims of the '758 Patent cover Defendants' Proposed ANDA No. 221732 Product.

189.    Defendants have no reasonable basis to believe that their Proposed ANDA No. 221732 Product, or the use of their Proposed ANDA No. 221732 Product in accordance with and as directed by their proposed labeling for that product, would not infringe one or more valid claims of the '758 Patent.

190.    The purpose of submitting ANDA No. 221732 was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of Defendants' Proposed ANDA No. 221732 Product prior to the expiration of the '758 Patent.

191.    Defendants' submission of ANDA No. 221732 for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA No. 221732 Product prior to the expiration of the '758 Patent was an act of infringement of the '758 Patent under 35 U.S.C. § 271(e)(2)(A).

192.    Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA No. 221732 Product and the proposed labeling therefor immediately and imminently upon the approval of ANDA No. 221732 and any amendments thereto, *i.e.*, prior to the expiration of the '758 Patent, in

40

violation of 35 U.S.C. § 271(b) and (c), and with knowledge and intent to cause infringement by patients and healthcare providers under 35 U.S.C. § 271(a).

193.    Defendants have knowledge of the '758 Patent at least because the '758 Patent is listed in the FDA's Orange Book for Lilly's Zepbound® (tirzepatide) drug product.  Defendants also included the '758 Patent in their Notice Letter for ANDA No. 221732 and thus were aware of it prior to this litigation.  Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their Proposed ANDA No. 221732 Product and the proposed labeling therefor immediately and imminently upon the approval of ANDA No. 221732 and any amendments thereto.

194.    Upon information and belief, Defendants plan and intend to, and will, sell their Proposed ANDA No. 221732 Product with instructions and labeling that instruct and encourage improving weight management in a patient in need of such improvement by a) administering to said patient a first dose of a GIP:GLP-1 Peptide having a GIP:GLP-1 receptor agonist potency ratio that is greater than or equal to the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 56 and less than the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 49, wherein the GIP:GLP-1 agonist potency ratio is measured after a 60 minute incubation using a casein cAMP assay normalized against GIP and GLP-1; and thereafter b) administering to said patient a second dose of the GIP:GLP-1 Peptide for a minimum of about two weeks; and thereafter c) administering to said patient a third dose of the GIP:GLP-1 Peptide for a minimum of about two weeks; and thereafter d) administering to said patient a fourth dose of the GIP:GLP-1 Peptide; wherein the first dose is about 25% of the fourth dose, the second dose is about 50% of the fourth dose and the third dose is about 75% of the fourth dose.

195. Healthcare providers and/or patients will improve weight management in a patient in need of such improvement by a) administering to said patient a first dose of a GIP:GLP-1 Peptide having a GIP:GLP-1 receptor agonist potency ratio that is greater than or equal to the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 56 and less than the GIP:GLP-1 receptor agonist potency ratio of a GIP:GLP-1 Peptide having SEQ ID NO: 49, wherein the GIP:GLP-1 agonist potency ratio is measured after a 60 minute incubation using a casein cAMP assay normalized against GIP and GLP-1; and thereafter b) administering to said patient a second dose of the GIP:GLP-1 Peptide for a minimum of about two weeks; and thereafter c) administering to said patient a third dose of the GIP:GLP-1 Peptide for a minimum of about two weeks; and thereafter d) administering to said patient a fourth dose of the GIP:GLP-1 Peptide; wherein the first dose is about 25% of the fourth dose, the second dose is about 50% of the fourth dose and the third dose is about 75% of the fourth dose, based on the instructions and labeling provided by Defendants in the proposed labeling for their Proposed ANDA No. 221732 Product.

196. By knowingly including the aforementioned instructions and labeling with Defendants' Proposed ANDA No. 221732 Product, Defendants plan and intend to, and will, actively induce infringement of the '758 Patent when ANDA No. 221732 and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '758 Patent, in violation of 35 U.S.C. § 271(b). Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval.

197. Upon information and belief, Defendants know that their Proposed ANDA No. 221732 Product is especially made or adapted for use in patented methods of the '758 Patent, and that their Proposed ANDA No. 221732 Product is not suitable for substantial noninfringing use.

Upon information and belief, Defendants plan and intend to, and will, contribute to infringement of the '758 Patent immediately and imminently upon approval of ANDA No. 221732, in violation of 35 U.S.C. § 271(c).

198.    The foregoing actions by Defendants constitute and/or will constitute infringement of the '758 Patent, active inducement of infringement of the '758 Patent, and contribution to the infringement by others of the '758 Patent, either literally or under the doctrine of equivalents.

199.    Unless Defendants are enjoined from infringing the '758 Patent, actively inducing infringement of the '758 Patent, and contributing to the infringement by others of the '758 Patent, Lilly will suffer irreparable injury.  Lilly has no adequate remedy at law.

## COUNT IX
### (Infringement of the '740 Patent)

200.    Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

201.    Defendants' purpose for submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of generic versions of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) prior to the expiration of the '740 Patent.

202.    Defendants' Notice Letters state that Defendants submitted Amneal's ANDAs seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic version of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) before the expiration of the '740 Patent.

203.    Claim 1 of the '740 Patent covers "A method for treating type 2 diabetes in a patient comprising: administering to the patient tirzepatide in once-weekly doses, the administering comprising: administering a first once-weekly dose of 2.5 mg for four weeks; increasing the once-weekly dose by increments of 2.5 mg to a once weekly maintenance dose of 5, 10, or 15 mg,

wherein each increased once weekly dose is administered for at least four weeks; and administering the maintenance dose of 5, 10, or 15 mg once weekly to treat type 2 diabetes in the patient, wherein the patient has type 2 diabetes and the tirzepatide is administered subcutaneously to the patient."

204.   Defendants' Proposed ANDA No. 221733 Product is covered by one or more claims of the '740 Patent, including at least claim 1, because Defendants are seeking proposed labeling that instructs and encourages treating type 2 diabetes in a patient by administering to the patient tirzepatide in once-weekly doses, the administering comprising: administering a first once-weekly dose of 2.5 mg for four weeks; increasing the once-weekly dose by increments of 2.5 mg to a once weekly maintenance dose of 5, 10, or 15 mg, wherein each increased once weekly dose is administered for at least four weeks; and administering the maintenance dose of 5, 10, or 15 mg once weekly to treat type 2 diabetes in the patient, wherein the patient has type 2 diabetes and the tirzepatide is administered subcutaneously to the patient.

205.   Claim 6 of the '740 Patent covers "A method for treating obesity in a patient comprising: administering to the patient tirzepatide in once-weekly doses, the administering comprising: administering a first once-weekly dose of 2.5 mg for four weeks; increasing the once-weekly dose by increments of 2.5 mg to a once weekly maintenance dose of 5, 10, or 15 mg, wherein each increased once weekly dose is administered for at least four weeks; and administering the maintenance dose of 5, 10, or 15 mg once weekly to treat obesity in the patient, wherein the tirzepatide is administered subcutaneously to the patient."

206.   Defendants' Proposed ANDA No. 221732 Product is covered by one or more claims of the '740 Patent, including at least claim 6, because Defendants are seeking proposed labeling that instructs and encourages treating obesity in a patient by administering to the patient tirzepatide in once-weekly doses, the administering comprising: administering a first once-weekly

dose of 2.5 mg for four weeks; increasing the once-weekly dose by increments of 2.5 mg to a once weekly maintenance dose of 5, 10, or 15 mg, wherein each increased once weekly dose is administered for at least four weeks; and administering the maintenance dose of 5, 10, or 15 mg once weekly to treat obesity in the patient, wherein the tirzepatide is administered subcutaneously to the patient.

207. The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, will infringe one or more claims of the '740 Patent, including at least claims 1 and 6, either literally or under the doctrine of equivalents.

208. Defendants submitted as part of Amneal's ANDAs certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), asserting that the claims of the '740 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, and/or sale, of their Proposed ANDA Products.

209. Defendants' Notice Letters do not contest that one or more claims of the '740 Patent cover Defendants' Proposed ANDA Products.

210. Defendants have no reasonable basis to believe that their Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, would not infringe one or more valid claims of the '740 Patent.

211. The purpose of submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '740 Patent.

212.    Defendants' submission of Amneal's ANDAs for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '740 Patent was an act of infringement of the '740 Patent under 35 U.S.C. § 271(e)(2)(A).

213.    Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto, *i.e.*, prior to the expiration of the '740 Patent, in violation of 35 U.S.C. § 271(b) and (c), and with knowledge and intent to cause infringement by patients and healthcare providers under 35 U.S.C. § 271(a).

214.    Defendants have knowledge of the '740 Patent at least because the '740 Patent is listed in the FDA's Orange Book for Lilly's Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) drug products.  Defendants also included the '740 Patent in their Notice Letters and thus were aware of it prior to this litigation.  Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto.

215.    Upon information and belief, Defendants plan and intend to, and will, sell their Proposed ANDA No. 221733 Product with instructions and labeling that instruct and encourage treating type 2 diabetes in a patient by administering to the patient tirzepatide in once-weekly doses, the administering comprising: administering a first once-weekly dose of 2.5 mg for four weeks; increasing the once-weekly dose by increments of 2.5 mg to a once weekly maintenance dose of 5, 10, or 15 mg, wherein each increased once weekly dose is administered for at least four

46

weeks; and administering the maintenance dose of 5, 10, or 15 mg once weekly to treat type 2 diabetes in the patient, wherein the patient has type 2 diabetes and the tirzepatide is administered subcutaneously to the patient.

216.    Healthcare providers and/or patients will treat type 2 diabetes in a patient by administering to the patient tirzepatide in once-weekly doses, the administering comprising: administering a first once-weekly dose of 2.5 mg for four weeks; increasing the once-weekly dose by increments of 2.5 mg to a once weekly maintenance dose of 5, 10, or 15 mg, wherein each increased once weekly dose is administered for at least four weeks; and administering the maintenance dose of 5, 10, or 15 mg once weekly to treat type 2 diabetes in the patient, wherein the patient has type 2 diabetes and the tirzepatide is administered subcutaneously to the patient, based on the instructions and labeling provided by Defendants in the proposed labeling for their Proposed ANDA No. 221733 Product.

217.    Upon information and belief, Defendants plan and intend to, and will, sell their Proposed ANDA No. 221732 Product with instructions and labeling that instruct and encourage treating obesity in a patient by administering to the patient tirzepatide in once-weekly doses, the administering comprising: administering a first once-weekly dose of 2.5 mg for four weeks; increasing the once-weekly dose by increments of 2.5 mg to a once weekly maintenance dose of 5, 10, or 15 mg, wherein each increased once weekly dose is administered for at least four weeks; and administering the maintenance dose of 5, 10, or 15 mg once weekly to treat obesity in the patient, wherein the tirzepatide is administered subcutaneously to the patient.

218.    Healthcare providers and/or patients will treat obesity in a patient by administering to the patient tirzepatide in once-weekly doses, the administering comprising: administering a first once-weekly dose of 2.5 mg for four weeks; increasing the once-weekly dose by increments of 2.5

47

mg to a once weekly maintenance dose of 5, 10, or 15 mg, wherein each increased once weekly dose is administered for at least four weeks; and administering the maintenance dose of 5, 10, or 15 mg once weekly to treat obesity in the patient, wherein the tirzepatide is administered subcutaneously to the patient, based on the instructions and labeling provided by Defendants in the proposed labeling for their Proposed ANDA No. 221732 Product.

219.   By knowingly including the aforementioned instructions and labeling with Defendants' Proposed ANDA Products, Defendants plan and intend to, and will, actively induce infringement of the '740 Patent when Amneal's ANDAs and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '740 Patent, in violation of 35 U.S.C. § 271(b).  Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval.

220.   Upon information and belief, Defendants know that their Proposed ANDA Products are especially made or adapted for use in patented methods of the '740 Patent, and that their Proposed ANDA Products are not suitable for substantial noninfringing use.  Upon information and belief, Defendants plan and intend to, and will, contribute to infringement of the '740 Patent immediately and imminently upon approval of Amneal's ANDAs, in violation of 35 U.S.C. § 271(c).

221.   The foregoing actions by Defendants constitute and/or will constitute infringement of the '740 Patent, active inducement of infringement of the '740 Patent, and contribution to the infringement by others of the '740 Patent, either literally or under the doctrine of equivalents.

222.   Unless Defendants are enjoined from infringing the '740 Patent, actively inducing infringement of the '740 Patent, and contributing to the infringement by others of the '740 Patent, Lilly will suffer irreparable injury.  Lilly has no adequate remedy at law.

## COUNT X
### (Infringement of the '404 Patent)

223.    Lilly incorporates each of the preceding paragraphs as if fully set forth herein.

224.    Defendants' purpose for submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, importation, and/or sale of generic versions of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) prior to the expiration of the '404 Patent.

225.    Defendants' Notice Letters state that Defendants submitted Amneal's ANDAs seeking approval to engage in commercial manufacture, use, offer for sale, and/or sale of a generic version of Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) before the expiration of the '404 Patent.

226.    Claim 1 of the '404 Patent covers "A pharmaceutical composition comprising: (a) tirzepatide, or a pharmaceutically acceptable salt thereof; and (b) from about 6.2 mg/mL to about 9.5 mg/mL of sodium chloride (NaCl), wherein the pharmaceutical composition has a pH of from about 6.5 to about 7.5 and the composition is free of preservative."

227.    Defendants' Proposed ANDA Products are covered by one or more claims of the '404 Patent, including at least claim 1, because they are pharmaceutical compositions comprising: (a) tirzepatide, or a pharmaceutically acceptable salt thereof; and (b) from about 6.2 mg/mL to about 9.5 mg/mL of sodium chloride (NaCl), wherein the pharmaceutical composition has a pH of from about 6.5 to about 7.5 and the composition is free of preservative.

228.    The manufacture, use, sale, offer for sale, or importation of Defendants' Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, will infringe one or more claims of the '404 Patent, including at least claim 1, either literally or under the doctrine of equivalents.

229. Defendants submitted as part of Amneal's ANDAs certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), asserting that the claims of the '404 Patent are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, and/or sale, of their Proposed ANDA Products.

230. Defendants' Notice Letters do not contest that one or more claims of the '404 Patent cover Defendants' Proposed ANDA Products.

231. Defendants have no reasonable basis to believe that their Proposed ANDA Products, or the use of their Proposed ANDA Products in accordance with and as directed by their proposed labeling for those products, would not infringe one or more valid claims of the '404 Patent.

232. The purpose of submitting Amneal's ANDAs was to obtain approval under the FDCA to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '404 Patent.

233. Defendants' submission of Amneal's ANDAs for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products prior to the expiration of the '404 Patent was an act of infringement of the '404 Patent under 35 U.S.C. § 271(e)(2)(A).

234. Upon information and belief, Defendants intend to engage in the commercial manufacture, use, sale, importation, and/or offer for sale of their Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto, *i.e.*, prior to the expiration of the '404 Patent, in violation of 35 U.S.C. § 271(a).

235. Defendants have knowledge of the '404 Patent at least because the '404 Patent is listed in the FDA's Orange Book for Lilly's Mounjaro® (tirzepatide) and Zepbound® (tirzepatide) drug products. Defendants also included the '404 Patent in their Notice Letters and thus were aware of it prior to this litigation. Notwithstanding this knowledge, Defendants continue to assert their intent to engage in the manufacture, use, offer for sale, importation, and/or sale of their Proposed ANDA Products and the proposed labeling therefor immediately and imminently upon the approval of Amneal's ANDAs and any amendments thereto.

236. Defendants plan and intend to, and will, actively induce infringement of the '404 Patent when Amneal's ANDAs and any amendments thereto are approved, and will do so with specific intent to induce infringement of the '404 Patent, in violation of 35 U.S.C. § 271(b). Further upon information and belief, Defendants plan and intend to, and will, do so immediately and imminently upon approval. By way of example, Defendants will instruct, encourage, and knowingly cause third parties to make, use, offer for sale, sell and/or import the Proposed ANDA Products and thereby infringe the '404 Patent.

237. Upon information and belief, Defendants know that their Proposed ANDA Products are especially made or adapted for use in patented methods of the '404 Patent, and that their Proposed ANDA Products are not suitable for substantial noninfringing use. Upon information and belief, Defendants plan and intend to, and will, contribute to infringement of the '404 Patent immediately and imminently upon approval of Amneal's ANDAs, in violation of 35 U.S.C. § 271(c).

238. The foregoing actions by Defendants constitute and/or will constitute infringement of the '404 Patent, active inducement of infringement of the '404 Patent, and contribution to the infringement by others of the '404 Patent, either literally or under the doctrine of equivalents.

51

239.     Unless Defendants are enjoined from infringing the '404 Patent, actively inducing infringement of the '404 Patent, and contributing to the infringement by others of the '404 Patent, Lilly will suffer irreparable injury.  Lilly has no adequate remedy at law.

### **REQUEST FOR RELIEF**

WHEREFORE, Lilly requests the following relief:

(a)     A judgment that Defendants' submission of Amneal's ANDAs to the FDA was an act of infringement of one or more claims of the Asserted Patents under 35 U.S.C. § 271(e)(2)(A);

(b)     A judgment that Defendants' making, using, offering to sell, selling, marketing, distributing, or importing into the United States Defendants' Proposed ANDA Products prior to the expiration of the Asserted Patents will infringe, actively induce infringement of, and/or contribute to infringement by others of the Asserted Patents under 35 U.S.C. §§ 271(a), (b) and (c);

(c)     An Order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any FDA approval for Defendants to make, use, offer for sale, sell, market, distribute, or import Defendants' Proposed ANDA Products, or any product the use of which infringes the Asserted Patents, be not earlier than the latest expiration date among the Asserted Patents, inclusive of any extension(s) and additional period(s) of exclusivity;

(d)     A permanent injunction pursuant to 35 U.S.C. § 271(e)(4)(B) enjoining Defendants, Defendants' affiliates and subsidiaries, each of their officers, agents, servants and employees, and any person acting in concert with Defendants, from making, using, selling, offering to sell, marketing, distributing, or importing Defendants' Proposed ANDA Products, or any product the use of which infringes the Asserted Patents, or the inducement of or contribution to any of the foregoing, prior to the expiration date of the latest-expiring of the Asserted Patents, inclusive of any extension(s) and additional period(s) of exclusivity;

(e)     An award of damages or other relief, pursuant to 35 U.S.C. § 271(e)(4)(C), if Defendants engage in making, using, selling, offering for sale, marketing, distributing, or importing of Defendants' Proposed ANDA Products, or any product the use of which infringes the Asserted Patents, or induces or contributes to such conduct, prior to the expiration date of the latest-expiring of the Asserted Patents, inclusive of any extension(s) and additional period(s) of exclusivity;

(f)     A finding that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

(g)     An award of Lilly's costs and expenses in this action; and

(h)     Such further and other relief as this Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Jeremy A. Tigan*

Michael A. Morin
David P. Frazier
Ashley M. Fry
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Michelle L. Ernst
Geoffrey A. Kirsner
Alyssa A. Dolan
Darpan Patel
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

Aaron Barkoff
Danica Hostettler
ELI LILLY AND COMPANY
Lilly Corporate Center
Indianapolis, Indiana 46285
(317) 276-2000

August 6, 2026

Rodger D. Smith II (#3778)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Eli Lilly & Company*

54